# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

PAMELA L. BROWN FEDERICO,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. SA CV 07-00761-VBK

MEMORANDUM OPINION AND ORDER

(Social Security Case)

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.

Plaintiff raises the following three issues:

1. Whether the residual functional capacity ("RFC") found by the ALJ is supported by substantial evidence;
2. Whether the ALJ properly considered the testimony of Plaintiff;
3. Whether the ALJ properly considered the testimony of Mr. Federico.

**THE ALJ'S EVALUATION OF PLAINTIFF'S RFC**

**IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Upon evaluation of the evidence, the ALJ found that Plaintiff has the following severe impairments: status post spinal surgeries; lumbar radicular syndrome secondary to herniated discs; lumbar and cervical degenerative disc disease; and headaches. (AR 16.)

Further, after considering the evidence, the ALJ determined that Plaintiff has the following RFC:

> "Limitation to light work, with lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting for eight hours, and standing/walking for six hours out of an eight hour day, except that [Plaintiff] must have the ability to change position briefly for one to three minutes every 30 minutes. Occasional use of lower extremities for pushing and pulling/operating foot controls, and occasional climbing of stairs, bending, balancing, stooping, kneeling, crouching, or crawling. Restriction from climbing ladders or scaffolds, and working at unprotected heights and being around dangerous and fast-moving machinery. Because of pain and effects from medications, limitation to jobs which do

not require hypervigilance, or to be in charge of safety operations, or which require intense interpersonal reactions."

(AR 16.)

In making the argument that the ALJ's RFC determination is not supported by substantial evidence, Plaintiff focuses upon the ALJ's purported reliance on the testimony of the medical examiner ("ME") at the hearing. (JS at 3, et seq., AR at 1055, et seq.) In particular, Plaintiff notes that while the ALJ found that her headaches and cervical spine disorders are medically determinable severe impairments, the ME did not. Plaintiff then makes the argument, repeated numerous times in the JS, that since the impairments found by the ALJ are severe, there must be accompanying functional restrictions. (See JS at 3, 9, and 10.)

Essentially, Plaintiff's dispute is not with the ME's testimony; rather, it concerns the ALJ's RFC determination. Indeed, it is the ALJ's responsibility to make that determination. See 20 C.F.R. §404.1546 (2007). In making his determination, the ALJ referenced a substantial variety of medical information in the record. Indeed, the ALJ's summary of the evidence he reviewed in arriving at the RFC consumes over a full page of his decision. (See AR at 16-18.) In brief, this evidence includes records as to a work-related injury and back surgery which was performed on Plaintiff, and the conclusions of her treating orthopedist, Dr. Jaffin, as set forth in a report of an examination conducted on March 23, 1990 (AR 848-853) and an earlier examination on November 17, 1989. (AR 854-860.) In his report, Dr. Jaffin limited Plaintiff to light work with no prolonged sitting (AR

859), and he repeated this opinion in his later report. (AR 852.)

The ALJ also noted that in November 1990, Plaintiff had a redo laminectomy and foraminotomy. (AR 17, 1015-1017.)  The ALJ noted that Plaintiff's pain complaints were handled post-operatively with analgesics (AR 17, 1005, 1018), and he also noted that as of March 14, 1994, Plaintiff was walking two miles a day. (Id.)  On May 30, 1989, Plaintiff reported a diminution in the frequency and severity of her headaches with no side effects from medication. (Id., 873-874.)

The ALJ noted that the remainder of the medical records in the file relate to the period following the expiration of Plaintiff's insured status ("DLI"). (Id.)  The ALJ made note of a consultative internal medicine examination ("CE") of July 16, 2003 performed by Dr. Enriquez, at the request of the Department of Social Services. (AR 17-18, 771-775.)[1]

In determining Plaintiff's RFC, the ALJ indicated he was relying upon the opinions of the ME, of Dr. Enriquez, and finally, of her treating physician, Dr. Jaffin. (AR 19.)  The ALJ also considered the disability opinion rendered on May 12, 2003 by Plaintiff's physician, Dr. Hutain, but indicated that there were minimal, if any, objective findings which supported Dr. Hutain's conclusion of disability. (Id.)

Plaintiff correctly notes that the ALJ relied, in part, on the ME's testimony.  In turn, Plaintiff faults the ME for not assessing any functional restrictions due to Plaintiff's headaches.  The testimony of the ME was that Plaintiff's headaches did not seem to require hospitalization or anything more than routine followup care,

---

[1] As a matter of law, medical records following the DLI may have relevance to the determination of disability prior to the DLI. See Smith v. Bowen, 849 F.2d 1222 (9th Cir. 1988).

and that there had been no diagnostic tests to consider them. (AR 1058.) Plaintiff points to nothing in the record which would indicate the existence of functional limitations based upon headaches.

Plaintiff's main contention is that because the ALJ assessed severe impairments, each of them must have accompanying functional limitations relevant to disability. Simply put, this is not the law. The existence of an impairment does not prove disability, nor does it establish that there are functional limitations. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Plaintiff assumes the burden at this step of the sequential analysis to demonstrate that she had functional limitations which would prevent her from engaging in substantial gainful activity for a 12-month period. See 42 U.S.C. §423(d)(1)(A); 20 C.F.R. §404.1509 (2007). As the Court has noted, it is the ALJ's responsibility to determine a claimant's RFC, and to do this, the ALJ must weigh and examine any conflicts in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The Court is satisfied that the ALJ properly evaluated and resolved the evidence, and Plaintiff offers nothing of a substantive nature which would contradict that finding.

## THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY

In his decision, the ALJ considered Plaintiff's subjective assessments, summarized in the following portion of the decision:

> "The [Plaintiff] also testified that during the period 1990 to 1995, she had sharp, stabbing to dull pain in her low back radiating across her hip and down her leg into the foot. She had neck pain radiating to her head and down her left arm, and had headaches two times a week lasting one

> hour to all day or up to two days. She asserted difficulty in sitting for more than 30 minutes at a time, standing for more than 10 to 15 minutes, walking for more than 20 minutes at a time, or lifting or carrying more than 5 to 10 pounds, and that she needed to lay down three times a day for 30 minutes to one hour. She testified as to using a walker since 1994, prescribed by a physician, and that prior to that she was using a cane."

(AR 18.)

The ALJ acknowledged that Plaintiff has medically determinable impairments which could be expected to produce some symptoms, including pain, but that her assertions "as to the extent, intensity, duration and functionally limiting effects of her impairments prior to [DLI] cannot be found persuasive due to inconsistencies and contradictions in the record as a whole." (AR 18.) The ALJ then set forth specific reasons for discounting Plaintiff's subjective claims. (See, generally, AR at 18-19.) These include the following:

1. While Plaintiff claimed that her pain rendered her almost sedentary on a continuous basis, the ALJ noted a lack of muscle atrophy;
2. While Plaintiff claimed frequent and disabling headaches, she was still able to walk for two miles, perform gardening, ride a bike, prepare meals and do housework;
3. While Plaintiff claimed in her testimony that she used a walker since 1994, and before that used a cane, her treating source makes no reference to use of any ambulatory device;
4. While Plaintiff asserted that she has confusion and memory

loss, when examined, she has been found to be oriented and able to provide a clear and coherent account of her medical history.

(Id.)

The general principles governing credibility analysis are well known. In a burden-shifting scenario, once a claimant has established that she has an underlying medical impairment which could be reasonably expected to produce some subjective symptoms, the ALJ is required to provide specific, clear and convincing reasons to reject allegations that the subjective symptoms are in fact disabling. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Further, the factors to be weighed by an ALJ are set forth in regulations, and include "the nature, location, onset, duration, frequency, radiation, and intensity" of pain or other symptoms; "precipitating and aggravating factors;" "type, dosage, effectiveness and adverse side effects" of any medication; "treatment, other than medication;" "functional restrictions;" "claimant's daily activities;" "unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation." See 20 C.F.R. §404.1529 (2007).

Plaintiff asserts that the ALJ's discussion of muscle atrophy is inapplicable because muscle atrophy would not be necessarily associated with headaches. But Plaintiff mistakes the ALJ's meaning. The ALJ referred to the fact that while Plaintiff testified to an almost completely sedentary lifestyle, this was unaccompanied by any muscle atrophy. As the Commissioner correctly notes, this is an acceptable factor in the credibility analysis in this particular

circumstance. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

With regard to Plaintiff's activities of daily living (ADL), Plaintiff again incorrectly shifts the focus. The issue in this context is not, as Plaintiff suggests, whether the types of ADLs of which Plaintiff is capable are transferrable to light work; rather, it is whether the extent of Plaintiff's ADLs are inconsistent with her subjective descriptions as to the limitation of her activities. With regard to this factor, the record is clear that Plaintiff's ADLs as actually demonstrated were in substantial contradiction to her claims of a sedentary lifestyle. Similarly, Plaintiff's claim that she required use of a walker is belied by the medical records which contain no indication that a walker is necessary. This clearly impacts on her credibility, and the ALJ properly pointed it out.

For the foregoing reasons, the Court determines that the ALJ's credibility analysis is supported by substantial evidence, and meets the legal requirements set forth by regulation and case law.

**THE ALJ PROPERLY CONSIDERED THE TESTIMONY OF PLAINTIFF'S HUSBAND**

Plaintiff's husband testified regarding her limitations, including that she had trouble sitting; needed to change positions frequently, had trouble standing and walking; had trouble using her hands such that she would drop things; could only sit for at most 30 minutes; needed to lie down periodically during the day; and she would get headaches that could last a day or two. (AR at 1074-1076.)

The ALJ indicated that he gave consideration to this testimony, but did not specifically assess it, or indicate what consideration was being given to it. Plaintiff argues that the ALJ's failure to

specifically address this testimony violates the rule of Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987), that such testimony must be treated as competent evidence. The Court disagrees. The testimony of Plaintiff's husband was substantially duplicative of that given by Plaintiff. As the Court has determined, the ALJ provided specific and legitimate reasons to reject Plaintiff's own testimony. Inferentially, the testimony of Plaintiff's husband, which added nothing and largely repeated that of Plaintiff, was rejected for the same reasons. It would have added nothing for the ALJ to simply repeat the reasons he had provided for rejecting Plaintiff's testimony, in light of the fact that the evidence provided by Plaintiff's husband was substantially duplicative. For this reason, the Court finds no error, or at most, harmless error, in the ALJ's decision with regard to the impact, if any, of the testimony of Plaintiff's husband.

For the foregoing reasons, the decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: March 6, 2008

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE